RECEIVED

AUG 1 4 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CHRIS JAMES | CIVIL ACTION NO. 11-0566 |
| -vs- | JUDGE DRELL |
| SHRM CATERING SERVICES, INC.<br>d/b/a EUREST SUPPORT SERVICES INC., et al. | MAGISTRATE JUDGE KIRK |

RULING

Before the Court are two motions. The first is a Motion for Summary Judgment (Doc. 40) by Defendant, Noble Drilling Corporation ("Noble"). The second is a "Motion in Limine to Exclude the Opinion Testimony of Robert E. Borison" (Doc. 41) by Defendant, S.H.R.M. Catering Services, Inc. d/b/a Eurest Support Services, Inc. ("ESS"). For the following reasons, the motion for summary judgment (Doc. 40) will be **GRANTED**, and the motion in limine (Doc. 41) will be **GRANTED in PART** and **DENIED in PART**.

I.    Background

On June 13, 2010, Plaintiff was employed by ESS as a utility hand (whose primary duties involved housekeeping) aboard an offshore rig called the NOBLE DANNY ADKINS.[1] On that date, Plaintiff reported to ESS that he had fallen backwards from a top bunk bed while attempting to make it.

---

[1]  Noble's involvement in the operation and ownership of the NOBLE DANNY ADKINS will be discussed *infra*.

Plaintiff contends the accident occurred at about 3:55 p.m., and that he feel backwards from a height of approximately 5 to 6 feet from a bunk bed onto a chair, "violently hitting his back, shoulder, neck, and head, as he attempted to make the bed in accordance with the duties of his employment." (Doc. 1, ¶ 10). Mr. James alleges the fall "was caused by the negligence and wanton recklessness of Defendants, including their failure to provide him with proper safety equipment, including, but not limited to a step ladder, to perform the task he was assigned." (Doc. 1, ¶ 21).

Plaintiff says he immediately reported the accident and that, the next day, June 14, 2010, Plaintiff left the rig, because his 28-day hitch with ESS had been completed. Either before he left, or at some point during the trip from Galveston, Texas to Plaintiff's home in Mansura, Louisiana, ESS asked Plaintiff to stop in Lafayette, Louisiana to be examined by a doctor secured by ESS, Dr. Carey Hernandez at the Acadiana Orthopedic and Occupational Clinic. Before he arrived at the doctor's office, Plaintiff admits he consumed alcohol. Testing performed at the doctor's office confirmed Plaintiff had alcohol in his system.

Plaintiff claims that on June 24, 2010, he was notified he had been terminated by ESS because he was alleged to be under the influence of alcohol at the time of the accident. Mr. James contended this was inaccurate, and on August 2, 2010, he was told he was actually terminated because he arrived intoxicated at an ESS office on June 14, 2010. Plaintiff denies that he visited any ESS office on June 14, 2010.

Plaintiff seeks damages under general maritime law and as a Jones Act seaman. He also demands recovery from ESS for "wrongful termination," which he contends "was motivated in substantial part by the knowledge that [he] intended to file a personal injury action against [ESS] and for its failure to pay him the maintenance and cure benefits he was owed by law following his accident." (Doc. 1, ¶ 23). Plaintiff specifically makes a claim for punitive damages. (Doc. 1, ¶ 24).

Defendants deny liability and claim the incident was the sole fault of Plaintiff, who had been working on this particular rig since January 2010, was familiar with the safety requirements, and knew he was supposed to obtain a step ladder before he made up a top bunk if such a ladder was not already in the room. Plaintiff could also exercise stop work authority if the proper equipment was not present, but he did not do so.

II.    Law and Analysis

    A.    Motion for Summary Judgment by Noble (Doc. 40)

    1.    *Legal Standard*

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider all "evidence in the light most favorable to the party resisting the motion." Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir. 1983). It is important to note that the

standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

> 2.   *Jones Act Claim*

In the Pretrial Stipulations, the parties agree Plaintiff was a Jones Act seaman working within the course and scope of his employment with ESS on June 13, 2010. (Doc. 53). In its motion for summary judgment, Noble argues (1) it is not Plaintiff's employer for the purpose of the Jones Act, and (2) it does not owe Plaintiff a duty as a matter of law under general maritime law. (Doc. 40). In his opposition, Plaintiff concedes "that his Jones Act claim is against ESS as his employer" and "does not contend that his Jones Act claim extends to Noble." (Doc. 44, p. 2). As such, summary judgment is appropriate in favor of Noble as to Plaintiff's Jones Act claim.

> 3.   *Unseaworthiness Claim*

As a Jones Act seaman, Plaintiff "may also sue the owner of any vessel on which he is working for a breach of the warranty of seaworthiness, regardless of whether the vessel is owned by his employer." Becker v. Tidewater, 335 F.3d 376, 387 (5th Cir. 2003) (citing Parks v. Dowell Div. of Dow Chem. Corp., 712 F.2d 154, 156–58 (5th Cir. 1983)). Such claim must be brought against the owner of the vessel, and the record is less than clear regarding who owns the NOBLE DANNY ADKINS, thereby creating a potential dispute of material fact as to this issue. Plaintiff's Complaint alleges the vessel "was owned and/or operated and/or chartered and/or controlled by Defendant, Noble, and/or one of its affiliated and/or subsidiary business entities." (Doc. 1, ¶ 9). In its answer, Noble admits the vessel "was owned by and being

operated by Noble's affiliated entities in the Gulf of Mexico." (Doc. 9, ¶ 9). The joint

Pretrial Stipulations do not include a stipulation regarding ownership. (Doc. 53).

Plaintiff argues Noble is the owner of the NOBLE DANNY ADKINS (Doc. 44, p. 1)

while Noble argues it does not own the rig (Doc. 47, p. 3), but neither party has

attached evidence either way in support of their respective arguments as required

under Fed. R. Civ. Proc. 56(c). In short, we have nothing before us which establishes

affirmatively that Noble is the owner, thereby creating a genuine dispute of material

fact which could warrant the denial of summary judgment as to this claim.

However, as Noble points out in its reply (Doc. 47), Plaintiff failed to allege in

his Complaint (Doc. 1) that the NOBLE DANNY ADKINS was unseaworthy at the time

of his accident. Rather, this argument was raised for the first time in Plaintiff's

opposition to Noble's motion for summary judgment (Doc. 44). We agree with

Defendant's argument and cited authorities that unseaworthiness and negligence are

distinct causes of action (Doc. 47). See Becker v. Tidewater, 335 F.3d 376 (5th Cir.

2003); Johnson v. Offshore Express, Inc., 845 F.2d 1347 (5th Cir. 1988).

### 4.    *Negligence Claim under General Maritime Law*

"[A] Jones Act seaman may [ ] sue third parties for general maritime law

negligence." Becker v. Tidewater, Inc., 335 F.3d 376, 387 (5th Cir. 2003). Maritime law

applies general negligence principles. Oliver v. Weeks Marine, Inc., 2011 WL 2413498,

at *1 (E.D. La. June 13, 2011). "To establish maritime negligence, a plaintiff must

demonstrate that there was a duty owed by the defendant to the plaintiff, breach of

that duty, injury sustained by [the] plaintiff, and a causal connection between the

defendant's conduct and the plaintiff's injury." <u>Canal Barge Co., Inc. v. Torco Oil Co.</u>, 220 F.3d 370, 376 (5th Cir. 2000) (internal quotations omitted) (brackets in original).

Plaintiff was employed by ESS, which was Noble's independent contractor.[2] (Doc. 40-1). "Generally, a principal is not liable for the offense of its independent contractor committed in the course of performing its contractual duties." <u>Flynn v. Amoco Corp.</u>, 2001 WL 766968, at *3 (E.D. La. July 9, 2001). There are two exceptions to this general rule: "(1) a principal can be held liable for damages caused by the acts of its independent contractors if its work is ultrahazardous, and (2) a principal can be held liable if the principal reserves the right to supervise or control the work." <u>Id.</u>

Nothing in the record shows Plaintiff participated in any ultrahazardous activity; rather, he was a housekeeper onboard the NOBLE DANNY ADKINS.

It is also undisputed Noble did not have the right to supervise or control Plaintiff's work on the NOBLE DANNY ADKINS. Nothing in the record allows a finding that Noble exercised any control over any of Plaintiff's actions in the course and scope of his employment or while on board the NOBLE DANNY ADKINS. Contrarily, the record does show Mr. Jackson and Mr. Larry, both executive stewards employed by ESS, exercised control over Plaintiff's work on the rig. (Jackson Deposition, Doc. 40-4, at pp. 34, 36–37; Larry Deposition, Doc. 40-5, at pp. 87–88).

In his deposition, Plaintiff said he attended safety meetings conducted by ESS. (James Deposition, Doc. 40-2, at pp. 138–41). ESS required Plaintiff to take a physical

---

[2]  When considering a motion for summary judgment, we rely on evidence in the record to support the parties' assertions pursuant to Fed. R. Civ. Proc. 56(c). However, Plaintiff has not contested Noble's position that ESS was Noble's independent contractor, and we see no reason to vary from that understanding.

and to document safe and unsafe conduct on board the rig each day. (James

Deposition, Doc. 40-2, at pp. 106–07; Jackson Deposition, Doc. 40-4, at pp. 21–23;

Larry Deposition, Doc. 40-5, at pp. 23–25, 30–31). When discipline was necessary it

was also ESS who issued disciplinary violations against Plaintiff. (Exhibits 11–17 to

James Deposition, Doc. 40-2). Finally, ESS did not provide (and had no obligation to

provide) Noble with any paperwork following Plaintiff's accident. (Larry Deposition,

Doc. 40-5, at p. 69).

There is no genuine factual dispute in the record; Noble did not exercise

control over Plaintiff's work-related activities. Neither of the exceptions apply, and

Noble did not owe Plaintiff a duty because Plaintiff was employed by Noble's

independent contractor. Therefore, Plaintiff cannot maintain his general maritime

negligence claim against Noble and summary judgment will be granted as to this

claim.

B.    Motion in Limine by ESS (Doc. 41)

Plaintiff intends to offer Mr. Borison as a marine safety expert, and ESS argues

Mr. Borison's testimony will not assist the factfinder as required under Fed. R.

Evid. 702. As discussed at the pretrial conference on June 20, 2013 and under well

established standards of expert testimony, particularly in light of this matter being a

bench trial, Mr. Borison will be permitted to testify regarding applicable documented

and published safety standards. However, opinions regarding the failure to provide a

ladder for making bunk beds and the need for a job safety analysis to making bunk

beds will not assist the factfinder, and Mr. Borison will not be permitted to offer such

opinions. To this extent, Defendant's motion in limine (Doc. 41) will be **GRANTED** in

**PART** and **DENIED in PART**.

III.     Conclusion

For the foregoing reasons, Noble's Motion for Summary Judgment (Doc. 40)

will be **GRANTED**. Plaintiff's claims against Noble will be **DISMISSED with**

**PREJUDICE**. The Motion in Limine by ESS (Doc. 41) will be **GRANTED in PART and**

**DENIED in PART**. Disposition will enter by a separate judgment signed on this date.

SIGNED on this 14th day of August, 2013 at Alexandria, Louisiana.

Dee D. Drell, Chief Judge
United States District Court

8